UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v.   : | No. 24-cr-38 (ACR) |
| : | |
| **EMILY HERNANDEZ,** : | |
| : | |
| **Defendant.** : | |

# UNITED STATES' MOTION FOR
# DEPARTURE FROM GUIDELINES SENTENCE AND
# MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court, pursuant to Section 5K1.1 of the United States Sentencing Guidelines, to sentence the Defendant, Emily Hernandez ("Hernandez" or "Defendant Hernandez"), to a term less than otherwise required by the United States Sentencing Guidelines.[1] The reasons for this request are more fully set forth in the following Memorandum in Aid of Sentencing filed in this matter.

On May 16, 2024, the Defendant pleaded guilty to Counts One and Two of the Indictment, charging her with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count One) and Conspiracy to Commit Aggravated Identity Theft and Access Device Fraud, in violation of 18 U.S.C. § 371 (Count Two). Sentencing is currently scheduled for December 8, 2025.

For the reasons herein, and based on U.S.S.G. § 5K1.1 and the 18 U.S.C. § 3553(a) factors,

---

[1] The United States has determined to file its motion to depart and request a sentence beneath the agreed Guidelines range after considering all the facts and circumstances. As the Court is aware, in this District the factual and legal basis for all departure motions made by the United States must be reviewed and approved by the United States Attorney's Office Departure Committee. Counsel for the government submitted this matter to the Departure Committee for its review, and the Committee authorized the filing of this motion.

the United States requests that the Court sentence the Defendant to 12 months of probation, followed by one year of supervised release.

I.      FACTUAL AND PROCEDURAL BACKGROUND

In mid-2022, Defendant Hernandez joined a conspiracy with her co-defendants, Carter Rohn and Robert Powell, and others, who had already been engaging in this conduct for more than a year, to carry out fraudulent Subscriber Identity Module ("SIM") swap attacks in order to gain unauthorized access to online victim accounts for the purpose of unjustly enriching themselves.[2] They undertook these SIM swaps for the purpose of defeating multifactor authentication and/or two-step verification.

Defendant Hernandez's role in these swaps, while short-lived, was important to the operation's success: she provided her photograph to create fake identifications with victim identifying information on it, so she could enter stores of cell phone providers (e.g., AT&T or Verizon), pretend to be the victim, provide the fake identification, and socially engineer employees to assign the victim's SIM to a new device that she and her co-conspirators controlled. She was recruited into the conspiracy by more sophisticated members who were looking for a female to assist with performing SIM swaps on female targets. Once the SIM swap was successful her responsibilities stopped, her co-conspirators transmitted multifactor authentication methods, such as access device codes, to gain unauthorized access to victim accounts, including virtual currency exchange accounts, financial institution accounts, social media accounts, and electronic communication accounts to steal funds, data, and other personal identifying information ("PII") from those victims.

---

[2] A SIM card is a chip that stores information identifying and authenticating a cell phone subscriber. A SIM swap attack refers to the process of fraudulently inducing a mobile phone carrier to reassign a mobile phone number from the legitimate subscriber or user's SIM card (on a phone controlled by a victim) to a SIM card on a phone controlled by criminal actors.

During one such occasion in November 2022, shortly after performing SIM swaps in Utah with some of her co-conspirators, the Defendant and her co-conspirators traveled to El Paso, Texas, to conduct more SIM swaps. On or about November 11, 2022, the Defendant, acting at the direction of one of her co-conspirators, who himself received information from Powell and Rohn, conducted a SIM swap of Victim-1, who was an employee of a virtual currency exchange (Victim Company-1). Powell emphasized the importance of this SIM swap and explained that the co-conspirators would be paid double for this swap if it was successful. Defendant Hernandez never had direct contact with Powell and had only heard other members of the conspiracy talk about Powell. The co-conspirators created fake identification with Victim-1's PII but with the Defendant's photograph on it. A separate co-conspirator was responsible for creating and printing the identification card and simply handing it to Hernandez. The Defendant then went into a mobile service provider store in El Paso, Texas, presented the identification with her photograph and Victim-1's PII, and ultimately gained access to Victim-1's account. The Defendant and some of her co-conspirators then went to an Apple retail store to complete the SIM swap by transferring a mobile phone number associated with Victim-1's phone to a physical device in the co-conspirators' control. Below is a screenshot of surveillance footage from the Apple retail store. It depicts the Defendant and one of her co-conspirators.



After this SIM swap, the co-conspirators confirmed with Powell that this new phone was ready to receive and transmit multifactor authentication codes, including access codes to online accounts. These multifactor authentication codes allowed co-conspirators to gain unauthorized access to Victim Company-1's online networks and steal over $400 million dollars' worth of virtual currency from Victim Company-1. Defendant Hernandez did not know what the co-conspirators intended to do with the access code and did not know the target of the crime.

In addition to this incident, Defendant Hernandez personally participated in SIM swaps impacting more than 10 victims. For example, at or around the same time that she was involved in the SIM swap related to Victim-1, the Defendant played a similar role in a SIM swap of Victim-2. Defendant Hernandez impersonated Victim-2 at another mobile service provider approximately 12 miles from where she executed the SIM swap of Victim-1. Once the Defendant obtained control

4

over Victim-2's phone number, the co-conspirators used the security codes sent to Victim-2's phone number to steal approximately $592,000 in virtual currency from Victim-2. After these two successful thefts, the Defendant then travelled to New Mexico with co-conspirators with the intent to conduct additional SIM swaps.

At the time the Defendant joined the conspiracy, she knew that the purpose of her participation in the conspiracy was to impersonate victims and gain access to their telephone accounts to access their online accounts to steal funds, data, and/or PII from them. She did these SIM swaps, knowing that they were used to steal funds, so she could be compensated. In total, the Defendant traveled to stores in Utah, Colorado, New Mexico, and Texas for the purpose of conducting or attempting to conduct SIM swaps against more than 10 victims. The Defendant was paid $2,500 by members of the conspiracy to perform SIM swaps with them for this limited time. She also agrees that it was reasonably foreseeable to her that her conduct would have caused at least $1,500,000 in victim losses.

For her role in this conspiracy, on January 18, 2024, the Defendant was charged in both counts of the Indictment, with Powell and Rohn, for conspiracy to commit wire fraud and conspiracy to commit aggravated identity theft and access device fraud. PSR ¶ 1. Four months later, on May 16, 2024, she pleaded guilty to the Indictment. PSR ¶ 5.

## SENTENCING GUIDELINES

### A. Statutory Maximums and Mandatory Minimums

#### *Count One: Conspiracy To Commit Wire Fraud*

A violation of Conspiracy To Commit Wire Fraud, in violation of 18 U.S.C. § 1349, carries a maximum sentence of 20 years of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. §§ 3571(b)(2), (3); a term of supervised release of not

more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

*Count Two: Conspiracy to Commit Aggravated Identity Theft and Access Device Fraud*

A violation of Conspiracy to Commit Aggravated Identity Theft and Access Device Fraud, in violation of 18 U.S.C. § 371, carries a maximum sentence of 5 years of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. §§ 3571(b)(2), (3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

B. **Sentencing Guidelines Calculation**

The government agrees in part and disagrees in part with Probation's calculation of the Defendant's offense level under the United States Sentencing Guidelines ("U.S.S.G. or "Guidelines"), as set forth below. The government believes the correct sentencing guidelines calculation is as follows:

*Count One: Conspiracy To Commit Wire Fraud (18 U.S.C. § 1349)*

| 18 U.S.C. § 1349—Wire Fraud Conspiracy | |
|---|---|
| Base Offense Level (§ 2X1.1(a)/2B1.1(a)(1)) | 7 |
| Loss Amount Over $1.5 million (§ 2B1.1(b)(1)(I)) | +16 |
| More than 10 Victims (§ 2B1.1(b)(2)(A)) | +2 |
| Sophisticated Means (§ 2B1.1(b)(10)(C)) | +2 |
| Authentication Features/5+ Means of ID (§ 2B1.1(b)(11)(A), (C)) | +2 |
| Minimal Participant (§ 3B1.2(a)) | -4 |
| | |
| **Total Offense Level:** | **25** |

*Count Two: Conspiracy to Commit Aggravated Identity Theft and Access Device Fraud*

| 18 U.S.C. § 371—Conspiracy | |
|---|---:|
| Base Offense Level (§ 2X1.1(a)/2B1.1(a)(2)) | 6 |
| Loss Amount Over $1.5 million (§ 2B1.1(b)(1)(I)) | +16 |
| More than 10 Victims (§ 2B1.1(b)(2)(A)) | +2 |
| Sophisticated Means (§ 2B1.1(b)(10)(C)) | +2 |
| Authentication Features/5+ Means of ID (§ 2B1.1(b)(11)(A), (C)) | +2 |
| Minimal Participant (§ 3B1.2(a)) | -4 |
| | |
| **Total Offense Level:** | **24** |

With respect to the base level offense for Conspiracy to Commit Wire Fraud, Probation has assessed a base level offense of 6. The government believes this is incorrect. U.S.S.G. § 2B1.1(a)(1) states that if the object of the offense is a crime that carries a punishment of 20 years or more, that the base offense level is 7. The conviction in Count One is a violation of 18 U.S.C. 1349, which carries a maximum sentence of up to 20 years in prison. Accordingly, the base level offense should begin at 7, not 6 as calculated by the Probation Department.

Probation similarly takes a different view of the Defendant's involvement and only assesses a minor role in the offense, as opposed to the minimal role agreed to by the parties.

U.S.S.G. § 3B1.3 application note 3(c) provides a framework for evaluating the mitigating role assessment. According to this section, the Court shall look to the following factors:

- the degree to which the defendant understood the scope and structure of the criminal activity
- the degree to which the defendant participated in planning or organizing the criminal activity;
- the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
- the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
- the degree to which the defendant stood to benefit from the criminal activity.

In this case, Defendant Hernandez did not understand the scope of the criminal activity, did not participate in the planning or organizing, had no decision-making authority in the activity, had nearly no responsibility in the criminal acts, and barely benefitted from the crimes. For these reasons, the Government continues to believe that she warrants a minimal result reduction as agreed to in the plea agreement.

### C. Grouping and Guideline Range

Pursuant to U.S.S.G. § 3D1.1, 3D1.2(b), 3D1.2(d), and 3D1.3, Counts One and Two group as they involve substantially the same harm, resulting in a combined offense level of 25. A three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 results in an offense level of 22.

The U.S. Probation Office calculates the Defendant to have zero criminal history points, which places her in Criminal History Category I. *See* PSR ¶ 65.

Probation also assessed that, pursuant to U.S.S.G. § 4C1.1, the Defendant is eligible for the Zero-Point Offender adjustment of a two-level reduction. PSR ¶ 118. Relying upon the Plea Agreement's calculations of the guidelines, this results in a final offense level of 20 and a guidelines range of 33 to 41 months. PSR ¶ 116.

## SENTENCING RECOMMENDATION

### A. Sentencing Factors

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are no longer mandatory. However, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and "should be the starting point and the initial benchmark" in determining a defendant's sentence. *United States v. Gall*, 552 U.S. 38, 46, 49 (2007).

Accordingly, this Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49.

Next, the Court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49-50. The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a). *United States v. Rita*, 551 U.S. 338, 347-351 (2007). The § 3553(a) factors include, *inter alia*: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

### B. Substantial Assistance

The government is asking for a significant reduction in the Defendant's sentence due to the assistance provided to the government. The appropriate reduction for substantial assistance to authorities is governed by U.S.S.G.§5K1.1 which provides that:

The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

1. the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

2. the truthfulness, completeness, and reliability of any information or    testimony provided by the defendant;

9

3. the nature and extent of the defendant's assistance;
4. any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and
5. the timeliness of the defendant's assistance.

Defendant Hernandez offered substantial assistance to the United States at an early stage in this proceeding. She provided information to the FBI upon her arrest and immediately engaged in debrief sessions with the FBI and the United States Attorney's Office once she obtained counsel. She further entered her guilty plea and testified before the grand jury in a very timely manner. Her information was assessed as very truthful and complete, and assisted the government's investigation. For these reasons, the United States has moved for a substantial assistance reduction and a departure from the recommended Guidelines range.

### C. Sentencing Recommendation

The government recommends that the Court sentence the Defendant to a sentence of 12-months of probation followed by one year of supervised release. This incorporates the downward departure, the Defendant's minimal role in the offense, and her lack of criminal history. In addition, the government recommends that the Court enter the government's Proposed Order of Forfeiture, ECF No. 47, at sentencing. Such a sentence would reflect the seriousness of the Defendant's conduct, promote respect for the law, afford general deterrence, avoid unwarranted sentencing disparities, and would be reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

#### 1. The Nature and Circumstances of the Offense

As described in detail in the Factual Background, the nature and circumstances of the offense are significant. Members of the conspiracy executed sophisticated SIM swap attacks

against many victims. Some victims were targeted for their social media accounts and personal information while others, like Victim-1, were targeted for their virtual currency holdings. The government is unable to say that Defendant Hernandez had a full understanding of the scope of the conspiracy, but she very well understood that the group was accessing virtual currency accounts and other social media accounts. She seemingly turned a blind-eye to the substantial damage she was causing, along with her co-conspirators. Notably, this wasn't a one-time incident, she performed these SIM swaps in various states and traveled with members of the conspiracy facilitate the crimes. In total, she engaged in at least 10 SIM swaps in four different states.

### 2. History and Characteristics

The Defendant has no criminal history and has been consistently employed since 2019. *See* PSR ¶¶ 65; 93−101. The Defendant reports anticipating being enrolled in community college at the time of sentencing and continuing to engage in longtime hobbies such as weightlifting. *See* PSR ¶¶ 90, 92. Pretrial services also reports that the Defendant has been in compliance with her release conditions since her arrest in January 2024.[3] PSR ¶ 14. Although the Defendant turning to the instant offense in the context of otherwise steady employment is concerning, the United States believes that recidivism is not a significant concern in this case.

### 3. The Need for the Sentence to be Imposed

The sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2). As described above, the offenses of conviction are serious. These offenses required significant planning and deliberation, and the resulting harm to victims is significant. Therefore,

---

[3] The Defendant's supervising officer in the District of Colorado reports that the Defendant did test positive for marijuana at her first drug test on supervision, but has tested negative in all subsequent drug tests. *See* PSR ¶ 88.

"[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotations and citation omitted). However, as noted above, the Defendant's early acceptance of responsibility, substantial assistance, minimal role, and her conduct during the pendency of this case leads the United States to believe that specific deterrence is not a significant factor in this instance. Under the totality of the circumstances, the government's recommendation serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

4. **Forfeiture**

On May 28, 2024, the United States filed a proposed consent order of forfeiture to the Court for $2,500, which would require the Defendant to forfeit the proceeds she received from the counts of conviction. *See* ECF No. 47. The Defendant has agreed to the entry of this order, and the United States would ask that the Court authorize the order as part of the sentence. PSR ¶ 117.

## II. CONCLUSION

For the foregoing reasons, the United States recommends that the Defendant, Emily Hernandez, be sentenced to a term of one year of probation, followed by a term of one year of supervised release.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: *Kevin L. Rosenberg*
KEVIN L. ROSENBERG
DC Bar No. 90036678
Assistant United States Attorney
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
(202) 252-7833
kevin.rosenberg@usdoj.gov

*Jessica Peck*
JESSICA PECK
NY Bar No. 5188248
GAELIN BERNSTEIN
NY Bar No. 6081079
Trial Attorney
U.S. Department of Justice
1301 New York Ave NW
Washington, DC 20530
(202) 531-9339
(202) 308-3789
jessica.peck@usdoj.gov
gaelin.bernstein@usdoj.gov

## **CERTIFICATE OF SERVICE**

     I hereby certify that on November 24, 2025, I caused a copy of the foregoing to be served on counsel of record via electronic filing.

 

                                                           _____
KEVIN ROSENBERG
Assistant United States Attorney