IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| vs. | * |
| | *   Case No. 24-cr-0038-3 (ACR) |
| EMILY HERNANDEZ, | * |
| Defendant | * |

ooOoo

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING AND RESPONSE TO GOVERNMENT'S MEMORANDUM

Emily Hernandez, by her undersigned counsel, agrees with the United States that a sentence of 12-months probation is "sufficient, but not greater than necessary" to comply with the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation – as required by 18 U.S.C. § 3553(a).   *See* Motion for Departure from Guideline Sentence and Memorandum in Aid of Sentencing filed by the United States (ECF 79) at 2.

A sentence of probation is reasonable as it takes into account Emily Hernandez' limited role in the offense, the short period of her participation, the small amount of proceeds she derived from the crime, her immediate acceptance of responsibility and assistance to the United States, her history of steady lawful employment as well as her complete lack of criminal history and other personal mitigating factors.  Emily Hernandez is deeply sorry for her participation in this criminal conduct and for the harm she caused the victims of the fraudulent scheme.  She promises this Honorable Court that she will never again break the law.

Ms. Hernandez agrees with the government that she merits a 4-level reduction for minimal participant and that her final Guidelines Sentencing range before any departures or consideration of § 3553(a) factors is 33 to 41 months.  *Id.* at 7-8

**I.      Nature and Circumstances of the Offense Warrant a Sentence Below The Range**

Emily Hernandez agrees with the basic recitation of facts set out in the government's Memorandum at 2-5.  In sum, her participation in the offense was minimal.  While she knowingly participated in illegal activity, she had no role in devising the SIM swapping scheme nor in recruiting or directing the other conspirators, or otherwise in devising or performing the other multiple details necessary to carry out the fraudulent scheme.

She also did not have the slightest idea of the true scope of the offense.  Although she has accepted responsibility for a loss amount of at least $1,500,000, based on the reasonable foreseeability of her conduct and that of the other conspirators, the amount of money she derived from the scheme is further support of her minimal role.  She was paid approximately $2500 by the other conspirators.  In other words, she was paid one thousandths of the amount reasonably foreseeable to her and even a much more minuscule percentage the total loss occasioned by the scheme.

Emily had no direct contact with Defendant Powell, identified in the PSR as the "head of a SIM swapping group."  PSR ¶ 16.  While others were involved in the scheme for more than two years (PSR ¶ 19), she withdrew from the scheme after participating for only a few weeks (PSR ¶¶ 22-30). Indeed, as the PSR reflects she has had no involvement with the criminal justice system – not even a traffic citation.  PSR ¶¶ 63-69.  She only succumbed to participating during a particularly dire financial situation, when she and her mother were about to lose their apartment and needed money to move.

As noted above, the amount of loss for which Emily Hernandez is being held responsible substantially overstates her culpability and merits a sentence below the guideline range.  *See, e.g.,*

*United States v. Faulkenberry*, 759 F. Supp. 2d 915, 928 (S.D. Ohio 2010), *aff'd*, 461 F. App'x 496 (6th Cir. 2012) ("As has become common among district courts sentencing white-collar offenders in financial fraud cases, the Court finds that the loss calculation substantially overstates the gravity of the offense here").

Similarly, the cumulative effect of the enhancements applied for loss amount (16 levels) , number of victims (2 levels) and sophisticated means (2 levels) which total 20 levels also merits a downward variance from the range. *See, e.g, United States v. Jackson,* 346 F.3d 22, 26 (2d Cir. 2003) ("accumulation of somewhat overlapping enhancements, even if not amounting to double counting, can justify a downward departure").[1]

A sentence below the guideline range in the instant case is particularly appropriate as each of these U.S.S.G. § 2B1.1 enhancements are being imposed based on the conduct of the co-

---

[1] The Second Circuit explained why overlapping enhancements in the fraud guideline may overstate culpability warranting a sentence below the guideline range.

> Jackson's sentence illustrates the type of case that is eligible for a *Lauersen* departure. Although the enhancements imposed by the District Court are permissible, they are all little more than different ways of characterizing closely related aspects of Jackson's fraudulent scheme. Thus, his base level of 6 was increased 10 levels because his offense involved a large sum of money, another 2 levels because he carefully planned the activity, another 2 levels because he used sophisticated means, and another 4 levels because the scheme was extensive. Even though these enhancements are sufficiently distinct to escape the vice of double counting, they substantially overlap. Most fraud schemes that obtain more than one half million dollars involve careful planning, some sophisticated techniques, and are extensive. Moreover, a phenomenon of the Guidelines, graphically illustrated by this case, is that any one enhancement increases the sentencing range by a far greater amount when the enhancement is combined with other enhancements than would occur if only one enhancement had been imposed. . . . As in *Lauersen*, we think these enhancements combine to have a cumulative effect that is present "to a degree" not adequately considered by the Commission, *see* 18 U.S.C. § 3553(b), and therefore make available, in the discretion of the District Court, a downward departure. *See Lauersen*, 343 F.3d 604, 618-19 (2d Cir. 2003).

conspirators rather than on Emily's own conduct.

## II.     Emily Hernandez' History and Characteristics Warrant a Sentence Below the Guideline Range

As the PSR relates, Emily Hernandez was raised by her mother, with an absent father in a financially strapped single parent household.  PSR ¶¶ 70-78.  She also suffered other deprivations as detailed in the PSR ¶ 73.  While such a background often results in a multiple contacts with the criminal justice system and a sketchy work history, to her credit Emily Hernandez has lived an upstanding and productive life.

She has absolutely no contacts with the criminal justice system, not even a traffic citation. She graduated from high school and is pursuing higher education at a local community college.  PSR ¶ 90.  She has a steady work history.

Letters from family and friends detail that she is a thoughtful and kind person and good friend.  Her friends and family also express how out of character her conduct in this case was.  They also express that she is a young woman of good moral character, who is extremely remorseful for her conduct.  Six letters from family and friends are attached as Exhibits.

All of this information reflects that Emily Hernandez' participation in this offense is aberrational.  Her life-long conduct before and after her participation in this offense also shows that she is not likely to recidivate.  That she withdrew from the offense long before it was uncovered also shows the low likelihood of recidivism and the aberrational nature of her conduct.  The support she still has from her family and friends also supports the inference that there is a low likelihood of recidivism.

All these circumstances, are mitigating and merit a downward variance.  *See Rita v. United*

*States,* 551 U.S. 338, 364-65 (2007) (family ties proper consideration under § 3553(a)); *In Re Sealed Case*, 292 F.3d 913 (D.C. Cir. 2002) (district court may properly consider "defendant's acceptance of responsibility, desire to seek rehabilitation, and family and community ties" in a totality of the circumstances analysis even though Commission considered these factors separately). The Court can also take into account that family support is essential for a defendant to avoid recidivism.

Tragic childhood deprivations also merit consideration in determining the term of imprisonment. *See United States v. Lopez,* 938 F.2d 1293, 1298 (D.C. Cir. 1991) ("traumatic experiences to which offenders of whatever characteristics might have been exposed" may be grounds for downward departure); *see also United States v. Deigert*, 916 F.2d 916, 918-19 (4th Cir.1990) (remanding for resentencing where not clear that sentencing judge understood that he had discretion to depart downward in an extraordinary case for "tragic personal background and family history").

Finally, the Court should consider Emily's conduct before and after her short foray into the criminal conduct in this case as the best evidence that imprisonment is not necessary to protect he public or deter her from further criminal conduct. As the Supreme Court noted in *Pepper v. United States*, 562 U.S. 476, 491 (2011), in "assessing ... deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-[offense] conduct." Post offense "rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2).

Post offense conduct also sheds light on the likelihood that a defenedant will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence. *Id*; *see*

5

*also* §§ 3553(a)(2)(B)-(C); *Gall v. United States,* 552 U.S. 38, 59 (2007) ("Gall's self-motivated rehabilitation ... lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts").

### III.     Sentencing Guidelines Calculation

Ms. Hernandez agrees with the government's calculation of the Sentencing Guidelines set out in its Sentencing Memorandum at pp 5-8, with a resulting guideline range of 33 to 41 months before any 5K1.1 departure or consideration of § 3553(a) factors. In light of the government's Motion pursuant to usg 5K1.1 as well as the grounds for a sentence below the guideline range set out above, a sentence of probation is reasonable.

### CONCLUSION

For all the reasons set out above, and in accordance with the Government's Sentencing Memorandum, Emily Hernandez respectfully requests that this Honorable Court impose a sentence of 12 months' probation. She is extremely remorseful for her criminal conduct and poses no threat of recidivism. In light of all the mitigating factors present in the case, a sentence of probation is therefore "sufficient, but not greater than necessary" to impose just punishment, protect the public, deter, and provide needed rehabilitation as required by 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on government counsel via email this 2nd day of December, 2025.

*/s/ Carmen D. Hernandez*
**Carmen D. Hernandez**